UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JERRY D. JOHNSTON** | **CIVIL ACTION NO. 20-0740** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **SHERIFF JAY RUSSELL, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Plaintiff Jerry D. Johnston, a pre-trial detainee at Ouachita Parish Correctional Center ("OCC") proceeding pro se and in forma pauperis, filed this proceeding on approximately June 9, 2020, under 42 U.S.C. § 1983. He names the following defendants in their individual and official capacities: Sheriff Jay Russell, Warden Pat Johnson, and Lieutenant Donna Norman.[1] For reasons below, the Court should retain Plaintiff's conditions-of-confinement claims against Sheriff Jay Russell and Warden Pat Johnson, but the Court should dismiss Plaintiff's claims against Lieutenant Donna Norman.

## Background

Plaintiff alleges that, at OCC, "the shower draining system is unsanitary and not properly functioning." [doc. # 1, p. 3]. He alleges that the ventilation in his dormitory is "neglected[,]" and that "mold, mildew, fungus, worms, and fruit flies are ever present." *Id.* The conditions, which he began enduring on January 3, 2020, cause him to incur pain, "breathing issues[,]" discharges of blood and pus, the loss of his fingernails, rashes between his thighs, toes, and buttocks, and itching, burning, and splitting between his toes. *Id.* at 3, 6.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

Plaintiff notified Warden Johnson, who responded that the "matter would be handled." *Id.* at 3. "Maintenance then sprayed [the] showers with bleach and used a broom to sweep visible dust off vents." *Id.* Plaintiff claims, however, that "dust particles are still airborne and mold is still present[,]" causing him to experience congestion, headaches, sneezing, and coughing. *Id.* at 6.

Plaintiff faults Warden Johnson, alleging that Johnson "is responsible for maintaining the facility's living conditions . . . ." [doc. # 5, p. 1]. Plaintiff faults Sheriff Russell because he is "sheriff of the parish, overseer of the jail, and responsible for all inmates housed in [OCC]." [doc. # 1, p. 6]. He claims that both defendants know that the conditions are placing his "health and safety at risk." [doc. # 5, p. 1].

Plaintiff requested medical care on February 11, 2020. [doc. #s 1, p. 3; 5, p. 2]. Nurse Broadway informed him that his condition "was not a fungal matter," but Broadway nevertheless prescribed Tolfanate, an antifungal cream. [doc. # 1, pp. 3, 6]. The tolfanate did not "solv[e] [the] issue." *Id.* at 3. Rather, it "only slowed the spread of the rash never fully curing it." [doc. # 5, p. 2].

On May 24, 2020, Plaintiff requested medical care for "a fungal issue on [his] left fingers resulting in loss of fingernails." *Id.* He was prescribed Ketoconazole, "an oral antifungal medication." *Id.* Shortly thereafter, he "started having bad headaches and was feeling very nauseous." *Id.* He claims that an unidentified physician failed to inform him of the side effects of the medication before prescribing it. *Id.* at 3.

Plaintiff alleges that Lieutenant Norman "is the supervisor over the medical staff" and is therefore allegedly "responsible for health care protocol and how medical treatment is administered at [OCC]." [doc. # 5, p. 2]. He claims that Norman is aware of his "situation yet

2

fails to properly administer medical treatment" and does not document "the medical issues according to medical procedures and protocol." [doc. # 1, p. 6]. He also claims that Norman has failed to "intervene or protect" him from the "poor living conditions of confinement." [doc. # 5, p. 2].

Plaintiff seeks injunctive relief, punitive damages, and compensation for his medical issues, pain, and suffering. [doc. # 1, p. 4].

## Law and Analysis

**1. Preliminary Screening**

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[2] See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*). Because he is proceeding in forma pauperis, his Complaint is also subject to screening under § 1915(e)(2). Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual

---

[2] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

3

contentions are clearly baseless. *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plausibility does not equate to possibility or probability; it lies somewhere in between. *Id.* Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra*.

In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Medical Care

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x 328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A prison official acts with deliberate indifference to an inmate's health "only if he knows that [the] inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v. Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care claim). A plaintiff must establish that a prison official "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should

5

have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

Here, Plaintiff faults Lieutenant Norman for failing to provide adequate medical care. Distilled, however, he simply disagrees with the treatment he received. See *Alton*, 168 F.3d at 201 ("Actions and decisions by officials that are merely . . . ineffective . . . do not amount to deliberate indifference . . . ."). While he suggests that he should have received better or more effective care, his disagreement or dissatisfaction with the care he received falls short of establishing deliberate indifference and does not, consequently, state a plausible claim. See *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997) (citing *Young v. Gray*, 560 F.2d 201, 201 (5th Cir. 1977)); *Spears v. McCotter*, 766 F.2d 179, 181 (5th Cir. 1985).[3]

---

[3] See also *Frazier*, 707 F. App'x at 824 (finding no deliberate indifference where medical staff responded to the plaintiff's complaints and provided consistent care and medication, even though the plaintiff disagreed with the extent and form of treatment); *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992) (finding that an inmate received adequate care, even though the treatment may not have been the best, and that any deficiencies in treatment were minimal; moreover, the

Plaintiff also claims that Lieutenant Norman failed to "intervene or protect" him from the offending conditions of confinement. [doc. # 5, p. 2]. While he alleges that the conditions caused his injuries, the undersigned does not discern a claim for inadequate medical care.[4]

Even to the extent the preceding allegation can be construed as one of lack of medical care—as opposed to seeking relief for the harm to his health resulting solely from the shower conditions—he does not state a plausible claim. Liberally construed, he alleges that Norman knew he was exposed to a substantial risk of serious harm. However, he does not allege that Norman disregarded that risk by failing to take reasonable measures to abate it. He does not allege, for instance, that Norman refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.

Next, Plaintiff claims that an unidentified physician failed to inform him of the side effects of a medication before prescribing it. [doc. # 5, p. 3]. As a result, he had "bad headaches and [felt] very nauseous." *Id.* Plaintiff, however, does not name the unidentified physician as a defendant or otherwise indicate that he seeks relief from the unidentified physician. Even if he did, a "claim that prison doctors failed to advise [a plaintiff] of the side effects of medication, for which he received medical care, is not cognizable under 42 U.S.C. § 1983." *Dallas v. Stalder*, 73 F. App'x 79 (5th Cir. 2003); *Morgan v. Texas Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 507 (5th Cir. 2013). The unidentified physician's alleged inaction amounts to no

---

plaintiff's continuing pain, in and of itself, did not demonstrate that a constitutional violation occurred).

[4] The undersigned will address this particular allegation below.

7

more than possible negligent conduct, and "acts of negligence do not constitute deliberate indifference[.]"[5] *Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016).

Finally, Plaintiff claims that Norman failed to document "the medical issues according to medical procedures and protocol." [doc. # 5, p. 6]. This claim, however, is entirely conclusory. Plaintiff does not explain, for instance, what he means by "procedures and protocol," what the "medical issues" were, or how the failure to document harmed him or exposed him to a substantial risk of serious harm. See *Baughman v. Hickman*, 935 F.3d 302, 310 (5th Cir. 2019) (affirming dismissal of conclusory allegations of inadequate medical care).

The Court should dismiss these claims.

## 3. Lieutenant Norman's Involvement

Plaintiff seeks relief from Sheriff Jay Russell, Warden Pat Johnson, and Lieutenant Donna Norman for the injuries he suffered as a result of the poor drainage in the shower and the poor ventilation in the dormitory and/or shower. Considering the duration of the conditions and that they caused Plaintiff to suffer the ailments described above, the Court should retain this

---

[5] To the extent Plaintiff faults Norman, the "supervisor over the medical staff," for failing to supervise the unidentified physician, he does not plead a plausible claim because the alleged failure to supervise did not result in a violation of Plaintiff's constitutional rights. See *Barber v. Quarterman*, 437 F. App'x 302, 304–05 (5th Cir. 2011) ("According to Barber, the director of the Texas Department of Criminal Justice and the warden of the prison should be held liable for failing to properly train the other officials on the procedures to follow when a prisoner reports that his safety is in danger and for implementing unconstitutional policies that were inadequate to protect prisoners. However, because the policies have resulted in no violation of Barber's rights, he cannot succeed."); *Sanchez v. Grounds*, 591 F. App'x 263, 265 (5th Cir. 2015) (finding, where the plaintiff alleged that a warden "created an unwritten custom and policy to punish inmates, through demotion in classification, without notice and a hearing[,]" that the plaintiff's claim was unavailing "because the purported policy does not result in any constitutional injury."). The Court should dismiss this ostensible claim.

claim against Sheriff Russell and Warden Pat Johnson.[6] However, the Court should dismiss this claim against Norman.

Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). "A plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008).

Here, Plaintiff alleges that Norman, the "supervisor over the medical staff," "is aware of the serious health issues resulting from improper maintenance of the showers" yet has failed to "intervene of protect" him from the conditions. [doc. # 5, p. 2]. Plaintiff, however, does not allege that Norman was personally involved in—or responsible for—confining him under, failing to remove him from, creating, or failing to ameliorate the allegedly offending conditions. Similarly, he does not plausibly allege that Norman possessed the authority to remove him from the offending conditions. Again, the Court should dismiss this claim against Norman.

## **Recommendation**

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Jerry D. Johnston's

---

[6] See, e.g. *Smith v. Leonard*, 244 F. App'x 583, 584 (5th Cir. 2007) (finding, where a prisoner suffered headaches, sinus problems, trouble breathing, blurred vision, irritated eyes, and fatigue allegedly as result of toxic mold, that the plaintiff "alleged facts sufficient to preclude a determination that his mold claim is frivolous or fails to state a claim.").

9

claims against Lieutenant Donna Norman be **DISMISSED WITH PREJUDICE** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 15th day of July, 2020.

_____
Karen L. Hayes
United States Magistrate Judge