UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **JERRY D. JOHNSTON** | **CIVIL ACTION NO. 20-0740** |
| **VS.** | **SECTION P** |
| | **JUDGE TERRY A. DOUGHTY** |
| **SHERIFF JAY RUSSELL, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Plaintiff Jerry D. Johnston, a former pre-trial detainee at Ouachita Parish Correctional Center[1] ("OCC") proceeding pro se and in forma pauperis, moves for summary judgment on the merits of his claims. [doc. # 17]. Defendants, Sheriff Jay Russell and Warden Pat Johnson, oppose Plaintiff's motion. [doc. # 34]. Defendants also move for summary judgment, contending that Plaintiff failed to exhaust his administrative remedies and alternatively seeking judgment on the merits of Plaintiff's claims. [doc. # 23]. Plaintiff does not oppose the motion.[2]

For reasons below, the Court should grant Defendants' motion for summary judgment because Plaintiff does not genuinely dispute that he failed to exhaust all available administrative remedies. The Court should deny Plaintiff's motion for summary judgment.

## Background

Plaintiff filed this proceeding on approximately June 9, 2020, under 42 U.S.C. § 1983, naming the following defendants in their individual and official capacities: Sheriff Jay Russell, Warden Pat Johnson, and Lieutenant Donna Norman. On August 5, 2020, the Court dismissed

---

[1] Plaintiff is presently incarcerated at the United States Penitentiary in Pollock, Louisiana.

[2] [doc. # 25 ("Any party filing no brief will be deemed not to oppose the motion.")].

Plaintiff's claims against Lieutenant Donna Norman. [doc. # 9]. The Court retained Plaintiff's claims against Russell and Johnson.

Plaintiff alleges that at OCC, "the shower draining system is unsanitary and not properly functioning." [doc. # 1, p. 3]. He alleges that the ventilation in his dormitory is "neglected[,]" and that "mold, mildew, fungus, worms, and fruit flies are ever present." *Id.* The conditions, which he began enduring on January 3, 2020, cause him to incur pain, "breathing issues[,]" discharges of blood and pus, the loss of his fingernails, rashes between his thighs, toes, and buttocks, and itching, burning, and splitting between his toes. *Id.* at 3, 6.

Plaintiff notified Warden Johnson, who responded that the "matter would be handled." *Id.* at 3. "Maintenance then sprayed [the] showers with bleach and used a broom to sweep visible dust off vents." *Id.* Plaintiff claims, however, that "dust particles are still airborne and mold is still present[,]" causing him to experience congestion, headaches, sneezing, and coughing. *Id.* at 6.

Plaintiff faults Warden Johnson, alleging that Johnson "is responsible for maintaining the facility's living conditions . . . ." [doc. # 5, p. 1]. Plaintiff faults Sheriff Russell because he is "sheriff of the parish, overseer of the jail, and responsible for all inmates housed in [OCC]." [doc. # 1, p. 6]. He claims that both defendants know that the conditions are placing his "health and safety at risk." [doc. # 5, p. 1].

Plaintiff requested medical care on February 11, 2020. [doc. #s 1, p. 3; 5, p. 2]. Nurse Broadway informed him that his condition "was not a fungal matter," but Broadway nevertheless prescribed Tolfanate, an antifungal cream. [doc. # 1, pp. 3, 6]. The tolfanate did not "solv[e] [the] issue." *Id.* at 3. Rather, it "only slowed the spread of the rash never fully curing it." [doc. # 5, p. 2].

On May 24, 2020, Plaintiff requested medical care for "a fungal issue on [his] left fingers resulting in loss of fingernails." *Id.* He was prescribed Ketoconazole, "an oral antifungal medication." *Id.* Shortly thereafter, he "started having bad headaches and was feeling very nauseous." *Id.*

Plaintiff seeks injunctive relief, punitive damages, and compensation for his medical issues, pain, and suffering. [doc. # 1, p. 4].

## **Law and Analysis**

A. Summary Judgment Standard

Summary judgment is appropriate when the evidence before a court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id*.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate.

*Id*. "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).[3]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr–McGee Oil and Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013) (citations omitted). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To rebut a properly supported motion for summary judgment, the opposing party must show, with "*significant* probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (emphasis added). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

Relatedly, there can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-23. This is true "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. at 323.

---

[3] However, Rule 56 does not require a court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014) (quoted source omitted).

When a movant bears the burden of proof on an issue, it must establish "beyond peradventure[4] all of the essential elements of the claim . . . to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). In other words, the movant must affirmatively establish its right to prevail as a matter of law. *Universal Sav. Ass'n v. McConnell*, 1993 WL 560271 (5th Cir. Dec. 29, 1993) (unpubl.).

B. Exhaustion Principles

Under 42 U.S.C. § 1997e(a), "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory even where the relief sought cannot be granted by the administrative process. *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (citations omitted). All "available" remedies must be exhausted, whether speedy and effective, or not. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "Proper exhaustion requires that the prisoner not only pursue all available avenues of relief but also comply with all administrative deadlines and procedural rules." *Johnson v. Kukua,* 342 Fed. App'x. 933, 934 (5th Cir. Aug. 20, 2009) (unpubl.) (citing *Woodford,* 548 U.S. at 89–93). An untimely or otherwise procedurally defective administrative grievance does not satisfy the exhaustion requirement. *Id.*

The "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter,* 534 U.S. at 532 (citation omitted). An inmate is required to "exhaust his remedies, irrespective of the form of relief sought, injunctive or monetary." *Richbourg v. Horton,* 2008 WL 5068680 (5th Cir. Dec. 2, 2008) (unpubl.) (citation omitted).

---

[4] I.e., beyond doubt.

5

Exhaustion also applies to claims brought against defendants in their official and/or individual capacities. See, e.g., *Williams v. Henagan,* 595 F.3d 610, 618 (5th Cir. 2010); *Hines v. Texas,* 76 Fed. App'x. 564 (5th Cir. Sept. 29, 2003) (unpubl.).

Exhaustion is an affirmative defense; thus, the burden is on the defendant to establish that the plaintiff failed to exhaust available administrative remedies. *Dillon v. Rogers,* 596 F.3d 260, 266 (5th Cir. 2010). If a defendant meets this burden, a court has no discretion to excuse the plaintiff's failure. *Gonzales v. Seal,* 702 F.3d 785, 788 (5th Cir. 2012).

C. Analysis

Defendants argue that "Plaintiff failed to exhaust his administrative remedies available under the law prior to filing suit." [doc. # 23-1, p. 4].

Defendants maintain that "[t]he prisoner grievance system" codified in 22 LA. ADMIN. CODE PT I, 325, was available to Plaintiff at OCC. [doc. # 23-1, pp. 5-6]. Section 325 prescribes two "steps." *Id.* Under the first step, "The offender commences the process by completing a request for administrative remedy . . . or writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought." *Id.* at (G)(a)(i). Under the second step, an offender "may appeal to the secretary of the Department of Public Safety and Corrections by so indicating that he is not satisfied in the appropriate space on the response form and forwarding it to the ARP screening officer within five days of receipt of the decision." *Id.* at (J)(1)(b).

Defendants argue that Plaintiff did not initiate the second step of the administrative remedy procedure. They attach Plaintiff's February 9, 2020, "Level: 1" grievance, in which he raised concerns about the same conditions of confinement underlying the claims in this

6

proceeding. [doc. # 23-4, p. 3]. Defendants also present the following statements of fact concerning exhaustion:

> 2. On February 9, 2020, plaintiff complained via ARP about the condition of the showers.
>
> 3. On February 10, 2020, the ARP Administrator replied: "Mr. Johnson, your status as a federal Inmate has no influence on your housing situation at all. The federal marshals have inspected OCC and are comfortable with the living conditions, but I cannot control how you spend your free time. However, I have forwarded your ARP to the day shift to closely inspect the shower tomorrow morning."
>
> 4. The day shift supervisor, Lt. Oliver replied the same day, stating "Jerry Johnston I will have one of my deputies check on this today." *Id.*
>
> . . . .
>
> 6. Plaintiff never appealed this ARP, as evidenced by the ARP remaining at Level 1.

[doc. # 23-2]. The Court deems these facts admitted because Plaintiff did not file a statement of "material facts as to which there exists a genuine issue to be tried."[5]

Of import, Plaintiff conceded in his initial pleading that OCC had a prison grievance procedure and that he used it to present the same facts which formed the basis of this proceeding. [doc. # 1, p. 2]. Of even greater import, Plaintiff concedes that he did not proceed to the second step of the grievance procedure: "ARP is still pending in level one. Plaintiff never was able to exhaust necessary steps [sic]." [doc. # 17, p. 2].

The purported lack of a response to Plaintiff's first-step grievance does not excuse his failure to proceed to the second step of the procedure. Under 22 LA. ADMIN. CODE PT I, 325

---

[5] *Local Rule 56.*2 ("Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.").

(J)(1)(c): "[E]xpiration of response time limits shall entitle the offender to move on to the next step in the process." In other words, Defendants' alleged failure to respond is immaterial, and Plaintiff thus does not genuinely dispute that the second step of the procedure was "available."[6]

In summary (1) Plaintiff does not oppose Defendants' motion; (2) by local rule, Plaintiff admits that he never appealed his grievance; (3) Plaintiff concedes that he did not proceed to the second step of the grievance procedure; and (4) it is undisputed that the second step of the procedure was available to Plaintiff. Accordingly, there is no genuine dispute that Plaintiff failed to exhaust all available administrative remedies prior to filing this lawsuit, and Defendants are entitled to judgment as a matter of law.

Although dismissal for failure to exhaust administrative remedies is typically without prejudice,[7] the Court is authorized to dismiss Plaintiff's claims with prejudice with respect to his right to re-file them in forma pauperis ("IFP"):

> By choosing to file and pursue his suit prior to exhausting administrative remedies as required, [plaintiff] sought relief to which he was not entitled—that is, federal court intervention in prison affairs prior to the prison having had the opportunity to address the complaint within its grievance procedures. We therefore affirm the district court's order dismissing [plaintiff's] action with prejudice for purposes of proceeding IFP.

*Underwood v. Wilson,* 151 F.3d 292, 296 (5th Cir. 1998) (overruled by implication on other grounds by *Jones v. Bock,* 549 U.S. 199, 216 (2007)).

---

[6] See *Wilson*, 776 F.3d at 301 (observing that a prisoner must pursue "the grievance remedy to conclusion" even if "the prison fails to respond to the prisoner's grievance at some preliminary step in the grievance process[]" because "the prison's failure to timely respond simply entitles the prisoner to move on to the next step in the process.").

[7] *See*, e.g., *Cooper v. Quarterman,* 342 Fed. App'x. 12, 13 (5th Cir. 2009).

The foregoing approach is appropriate here. Plaintiff may present these claims to the Court once more only if he exhausts his administrative remedies, but he may not proceed in forma pauperis if he presents the claims again.

Finally, because it is undisputed that Plaintiff failed to exhaust his administrative remedies, the undersigned declines to address Defendants' alternative arguments for dismissal on the merits and further recommends denying Plaintiff's motion for summary judgment because he seeks judgment as a matter of law on the merits. *See Marshall v. Price*, 239 F.3d 365 (5th Cir. 2000) (declining to reach the merits of an inmate's Section 1983 claims after finding that he failed to exhaust his administrative remedies); *Jones*, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

## Recommendation

For the reasons above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment, [doc. # 23], be **GRANTED** and that Plaintiff Jerry D. Johnston's claims be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies but **WITH PREJUDICE** for purposes of proceeding in forma pauperis under 28 U.S.C. § 1915.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Summary Judgment, [doc. # 17], be **DENIED**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

In Chambers, Monroe, Louisiana, this 28th day of June, 2021.

_____
Kayla Dye McClusky
United States Magistrate Judge